

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

CHALMERS BROWN,

    Plaintiff,

vs.                              No. 04-2777-Ml/P

J. PONTE, et al.,

    Defendants.

---

ORDER ASSESSING FILING FEE
ORDER OF DISMISSAL
ORDER DENYING MOTION FOR APPOINTMENT OF COUNSEL AS MOOT
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

---

Plaintiff, Chalmers Brown, an inmate at the Shelby County Correctional Complex ("Jail"),[1] has filed a complaint under 42 U.S.C. § 1983, along with a motion for appointment of counsel. The Clerk of Court shall file the case and record the Defendants as J. Ponte, Chief Moore, and Mark Luttrell.

I.   Assessment of Filing Fee

Under the Prison Litigation Reform Act of 1995 (PLRA), 28 U.S.C. § 1915(b), all prisoners bringing a civil action must pay the full filing fee of $150 required by 28 U.S.C. § 1914(a). The in forma pauperis statute, 28 U.S.C. § 1915(a) merely provides the

---

[1] The word prison is used in this order to refer to all places of confinement or incarceration, including jails, penal farms, detention and classification facilities, or halfway houses.

This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on 5-16-05



prisoner the opportunity to make a "downpayment" of a partial filing fee and pay the remainder in installments.

In this case, Plaintiff has properly completed and filed both an in forma pauperis affidavit and a trust fund account statement. It is ORDERED that the trust fund officer at Plaintiff's prison shall calculate a partial initial filing fee equal to twenty percent of the greater of the average balance in or deposits to the Plaintiff's trust fund account for the six months immediately preceding the completion of the affidavit. When the account contains any funds, the trust fund officer shall collect them and pay them directly to the Clerk of Court. If the funds in Plaintiff's account are insufficient to pay the full amount of the initial partial filing fee, the prison official is instructed to withdraw all of the funds in the Plaintiff's account and forward them to the Clerk of Court. On each occasion that funds are subsequently credited to Plaintiff's account the prison official shall immediately withdraw those funds and forward them to the Clerk of Court, until the initial partial filing fee is paid in full.

It is further ORDERED that after the initial partial filing fee is fully paid, the trust fund officer shall withdraw from the Plaintiff's account and pay to the Clerk of this Court monthly payments equal to twenty percent (20%) of all deposits credited to Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10.00, until the entire $150.00 filing fee is paid.

Each time that the trust fund officer makes a payment to the Court as required by this order, he shall print a copy of the prisoner's account statement showing all activity in the account since the last payment under this order and file it with the Clerk along with the payment.

All payments and account statements shall be sent to:

Clerk, United States District Court, Western District of Tennessee, 167 N. Main, Room 242, Memphis, TN 38103

and shall clearly identify Plaintiff's name and the case number on the first page of this order.

If Plaintiff is transferred to a different prison or released, he is ORDERED to notify the Court immediately of his change of address. If still confined, he shall provide the officials at the new prison with a copy of this order.

If the Plaintiff fails to abide by these or any other requirement of this order, the Court may impose appropriate sanctions, including a monetary fine, without any additional notice or hearing by the Court.

The Clerk shall mail a copy of this order to the prison official in charge of prison trust fund accounts at Plaintiff's prison. The obligation to pay this filing fee shall continue despite the immediate dismissal of this case. 28 U.S.C. § 1915(e)(2). The Clerk shall not issue process or serve any papers in this case.

II.  Analysis of Plaintiff's Claims

Plaintiff sues Jail Director J. Ponte, Chief Moore, and Shelby County Sheriff Mark Luttrell.  Plaintiff alleges that he was removed from the general jail population on May 13, 2004, and placed in administrative segregation for thirty-seven days with no explanation.  He alleges that he was not allowed to return to the same pod and "all [his] rights were not reinstated as claimed." Plaintiff alleges that he was deprived of due process by the manner in which he was placed in segregation without a timely investigation or explanation.  He further alleges that he suffered emotional and mental injury from being placed in a cell with waste water leaking from the walls and around the toilet.

Plaintiff alleges that he has written letters and filed grievances.  He attached a copy of grievance No. 60069 regarding wastewater in his cell, dated June 7, 2004, and the response of the grievance department, dated July 31, 2004, that the information was forwarded to the maintenance department.  Plaintiff alleges in the complaint that he was relocated to another pod on June 18, 2004, prior to receiving this response to grievance 60069, and he does not allege that he appealed the response.

Plaintiff also attached copies of grievance nos. 88903 and 88910, which were filed on May 16, 2004, and No. 94629, which was filed on May 14, 2004, which contain his complaint that he was placed on segregation for no reason.  The grievance committee responded on May 24, 2004, that No. 88910 was repetitive and No. 94629 nongrievable.  Plaintiff has not attached a copy of any

4

response for grievance No. 88903. He does not allege that he appealed the responses.

Plaintiff has attached a copy of a memorandum from Security Operations Sergeant Bratcher, dated June 15, 2004, regarding his request to go back to general population which states that Plaintiff's "case is under investigation and is being referred" to the Administrative Segregation Coordinator for a response. He attached a second memorandum from Bratcher, dated June 18, 2004, which states that Plaintiff was relocated to general population with all privileges reinstated on June 1, 2004. Brown does not attach a copy of any grievance or appeal alleging that all privileges were not restored as stated in Bratcher's memorandum.

The Sixth Circuit has held that 42 U.S.C. § 1997e(a) requires a federal court to dismiss without prejudice whenever a prisoner brings a prison conditions claim without demonstrating that he has exhausted his administrative remedies. Brown v. Toombs, 139 F.3d 1102 (6th Cir. 1998). The Court reaffirmed that this requirement applies even to claims seeking monetary damages. Wyatt v. Leonard, 193 F.3d 876, 878 (6th Cir. 1999).

This requirement places an affirmative burden on prisoners of pleading particular facts demonstrating the complete exhaustion of claims. Knuckles El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000). In order to comply with the mandates of 42 U.S.C. § 1997e(a),

> a prisoner must plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint or, in the absence of written documentation,

5

> describe with specificity the administrative proceeding and its outcome.

Id. at 642; see also Curry v. Scott, 249 F.3d at 503-04 (finding no abuse of discretion where district court dismissed case for failure to exhaust when Plaintiffs did not submit documents showing complete exhaustion of their claims or otherwise demonstrate exhaustion).

Arguably, Plaintiff's allegations and attachments to his complaint are insufficient to demonstrate that he has fully exhausted his administrative remedies on all issues raised in this complaint. Despite this failing, however, 28 U.S.C. § 1997e(c)(2) provides that a court may, despite a lack of exhaustion, dismiss a frivolous claim:

> In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.

42 U.S.C. § 1997e(c)(2). This Court, therefore, analyzes prisoner complaints for frivolity regardless of exhaustion of grievance procedures.

An inmate does not have a liberty interest in assignment to a particular cell or security classification within an institution. See generally Sandin v. Conner, 515 U.S. 472, 484-87 (1995); Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montanye v. Haymes, 427 U.S. 236, 243 (1976); Moody v. Daggett, 429 U.S. 78, 88, n.9 (1976); Newell v. Brown, 981 F.2d 880, 883 (6th Cir. 1992); Beard v. Livesay, 798 F.2d 874, 876

6

(6th Cir. 1986). Furthermore, the Supreme Court has repeatedly observed that prisons present an "ever-present potential for violent confrontation." Whitley v. Albers, 475 U.S. 312, 321 (1986) (quoting Jones v. No. Car. Prisoner's Labor Union, Inc., 433 U.S. 119, 132 (1977)). See also Wolff v. McDonnell, 418 U.S. 539, 561-62 (1974)(prisons are populated by violent offenders, causing unremitting tension among inmates and between inmates and guards). Consequently, the Court has concluded that security is the overriding penological interest at stake in any jail or prison. "[T]he core functions of prison administration [are] maintaining safety and internal security." Turner v. Safley, 482 U.S. 78, 92 (1987). See also Thornburgh v. Abbott, 490 U.S. 401, 415 (1989)(protecting prison security is central to all other correctional goals); Meadows v. Hopkins, 713 F.2d 206, 209-10 (6th Cir. 1983). Furthermore, the requirement that prison officials maintain security is simply the means by which they protect the Eighth Amendment personal safety rights of inmates. See generally Farmer v. Brennan, 511 U.S. 825, 834 (1994).

To the extent that Plaintiff complains because he was placed in administrative segregation, he has no claim. See Sandin, 515 U.S. at 484-87 (confinement to segregation is not an atypical or significant hardship giving rise to due process protections); Schrader v. White, 761 F.2d 975, 980 (4th Cir. 1985)(observing that not infrequently the same inmates who desire secure surroundings frequently complain when officials impose conditions reasonably related to providing that security). See also Hutto v. Finney, 437

7

U.S. 678, 686 (1978)(confinement to punitive isolation does not implicate cruel and unusual punishment unless conditions themselves are cruel and unusual); Sheley v. Dugger, 833 F.2d 1420, 1428-29 (11th Cir. 1987)("administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment," citing Hutto); Gibson v. Lynch, 652 F.2d 348, 352 (3d Cir. 1981)(same). Cf. Hoptowit v. Ray, 682 F.2d 1237, 1256 (9th Cir. 1982)(classification decisions, in and of themselves, do not violate Eighth Amendment); Gilland v. Owens, 718 F. Supp. 665, 686 (W.D. Tenn. 1989)(same, following Hoptowit).

The Eighth Amendment prohibits the intentional infliction of cruel and unusual punishment on an inmate. Wilson v. Seiter, 501 U.S. 294, 297 (1991). An Eighth Amendment claim consists of both objective and subjective components. Farmer, 511 U.S. at 834; Hudson v. McMillian, 503 U.S. 1, 8 (1992); Wilson, 501 U.S. at 298. The objective component requires that the deprivation be "sufficiently serious." Farmer, 511 U.S. at 834; Hudson, 503 U.S. at 8; Wilson, 501 U.S. at 298. The subjective component requires that the official act with the requisite intent, that is, that he have a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 297, 302-03. The official's intent must rise at least to the level of deliberate indifference. Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 303.

An Eighth Amendment claim requires a showing that an inmate "is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834; Stewart v. Love, 796 F.2d

8

43, 44 (6th Cir. 1982). Within the context of claims that prison conditions constitute a deprivation sufficiently serious to meet the objective component of an Eighth Amendment claim, the Court's inquiry must focus on whether inmates are deprived of the "minimal civilized measure of life's necessities." Wilson, 501 U.S. at 298 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The Constitution "'does not mandate comfortable prisons.'" Wilson, 501 U.S. at 298 (quoting Rhodes, 452 U.S. at 349). Rather, "routine discomfort 'is part of the penalty that criminal offenders pay for their offenses against society.'" Hudson, 503 U.S. at 9 (quoting Rhodes, 452 U.S. at 347).

In considering the types of conditions that constitute a substantial risk of serious harm, the Court considers not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency, i.e., that society does not choose to tolerate this risk in its prisons. Helling v. McKinney, 509 U.S. 25, 36 (1993).

To the extent that Plaintiff's complaint should be construed as alleging that administrative segregation living conditions as a whole violate the Eighth Amendment, he has no claim. "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." Wilson, 501 U.S. at 305.

> In certain extreme circumstances the totality itself may amount to an eighth amendment violation, but there still must exist a specific condition on which to base an

9

> eighth amendment claim. We believe such conditions, 'considered alone or in combination [with other conditions]' must amount to a deprivation of 'life's necessities' before a violation of the eighth amendment can be found.

Gilland, 718 F. Supp. at 682 (quoting Walker v. Mintzes, 771 F.2d 920, 932 (6th Cir. 1985)(citations omitted)).

Plaintiff alleges that he was placed in a cell with leaky walls and a leaky toilet, however, he fails to allege that he suffered any actual physical harm. Under 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." This claim thus fails for want of an allegation of the requisite harm.

Accordingly, this complaint fails to state a claim upon which relief may be granted and is DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff's motion for appointment of counsel is DENIED as moot due to the dismissal of his complaint.

III. Appeal Issues

The next issue to be addressed is whether Plaintiff should be allowed to appeal this decision in forma pauperis. Twenty-eight U.S.C. § 1915(a)(3) provides that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). Accordingly, it would be inconsistent for a district court to determine that a complaint

10

which fails to state a claim upon which relief may be granted is of sufficient merit to support an appeal in forma pauperis. See Williams v. Kullman, 722 F.2d 1048, 1050, n.1 (2nd Cir. 1983). The same considerations that lead the Court to dismiss this case for failing to state a claim also compel the conclusion that an appeal would not be taken in good faith.

It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter is not taken in good faith, and the Plaintiff may not proceed on appeal in forma pauperis.

The final matter to be addressed is the assessment of a filing fee if Plaintiff appeals the dismissal of this case. The United States Court of Appeals for the Sixth Circuit has held that a certification that an appeal is not taken in good faith does not affect an indigent prisoner Plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). McGore v. Wrigglesworth, 114 F.3d 601, 610-11 (6th Cir. 1997). McGore sets out specific procedures for implementing the PLRA. Therefore, the Plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee,[2] he must comply with the procedures set out in McGore and § 1915(b).

---

[2] The fee for docketing an appeal is $250. See Judicial Conference Schedule of Fees, ¶ 1, Note following 28 U.S.C. § 1913. Under 28 U.S.C. § 1917, a district court also charges a $5 fee:

> Upon the filing of any separate or joint notice of appeal or application for appeal or upon the receipt of any order allowing, or notice of the allowance of, an appeal or of a writ of certiorari $5 shall be paid to the clerk of the district court, by the appellant or petitioner.

11

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by this Plaintiff, this is the first dismissal in this district of one of his cases for failure to state a claim.

IT IS SO ORDERED this ___11___ day of May, 2005.

JON PHIPPS McCALLA
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 5 in case 2:04-CV-02777 was distributed by fax, mail, or direct printing on May 16, 2005 to the parties listed.

---

Chalmers Brown
WEST TENNESSEE DETENTION CENTER
01141700
P.O. 509
Mason, TN 38049

Honorable Jon McCalla
US DISTRICT COURT